**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Nicholas P. Melito
28 Liberty Street
New York, New York 10005
Telephone:  (212) 300-0375

**NICHOLS KASTER, PLLP**
Kai H. Richter, MN Bar No. 0296545*
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 256-3200

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ARIAN NUNEZ, individually and on behalf of the classes,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**STERLING INFOSYSTEMS, INC.,**<br><br>**Defendant.** | No. 16-CV-2738<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Arian Nunez ("Plaintiff"), by and through his attorneys, and on behalf of himself and the classes set forth below, brings the following Class Action Complaint against Sterling Infosystems, Inc. ("Sterling" or "Defendant").

## INTRODUCTION

1.      This case is about a consumer reporting agency's willful failure to follow the Fair Credit Reporting Act ("FCRA"), which is designed to protect consumers from inaccurate, misleading, and manifestly improper consumer reporting practices.

2.      Employers, lenders, and landlords use consumer reports to screen applicants, borrowers, and tenants. Among other things, they use such reports to deny people jobs, credit, and housing.

3.      Recognizing that the content of consumer reports can have a significant impact on the livelihood and well-being of individuals, Congress has chosen to regulate the procurement, use, and content of such reports through the FCRA. *See* 15 U.S.C. § 1681 *et seq.*

4.      The stated purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for [handling and reporting] information in a manner that is fair and equitable to the consumer … with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). As a means of achieving this goal, the FCRA requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information" provided in a report. 15 U.S.C. § 1681e(b). Additional protective requirements, described more fully below, attach when reports are used for employment purposes.

5.      Defendant has routinely and systematically violated these requirements by reporting information in a manner that falsely indicates that the subject of the report has a record as a "Level 1" sex offender when in reality no such record exists.

6.      These violations were not the result of inadvertent or isolated mistakes.  To the contrary, Defendant's consumer reports were purposely designed to classify persons as "Level 1" sex offenders even though they had no record of a sex offense.

7.      To remedy this wrongful conduct, and prevent Defendant from continuing to misreport him and other persons as "Level 1" sex offenders, Plaintiff brings this action against Defendant under the FCRA on behalf of himself and other similarly-situated class members.  In connection with his FCRA claims, Plaintiff seeks statutory damages, punitive damages, injunctive relief, reasonable costs and attorneys' fees, and other appropriate relief as determined by the Court.

## THE PARTIES

8.      Plaintiff Arian Nunez is an adult resident of Union City, New Jersey.

9.      Defendant Sterling Infosystems, Inc. is a Delaware corporation with its principal place of business located in New York, New York.

2

10.     At various times, Defendant has operated under the trade names "SterlingBackcheck" and "Sterling Testing Systems."

11.     Defendant is a consumer reporting agency within the meaning of the FCRA.  For monetary fees, Defendant engages in the practice of assembling information on consumers for the purpose of furnishing consumer reports to third parties and uses interstate commerce, including the mail and Internet, for the purpose of preparing and furnishing such reports.

12.     Defendant provides consumer reports for employment purposes, i.e. providing background checks to employers for their use in making decisions about people who may work for them, including for use in taking adverse employment action, e.g., termination, failure to hire, and failure to promote.

13.     As discussed further below, Defendant furnished a consumer report on Plaintiff to a third party for employment purposes, which contained inaccurate and/or misleading information regarding Plaintiff, and wrongly classified him as a "Level 1" sex offender.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in this District.

## STATUTORY BACKGROUND

16.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: (1) that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job, for credit, or for housing; and (2) despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

17.     Congress specifically recognized that the entities responsible for preparing consumer reports, called consumer reporting agencies, "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," including information regarding the "character, and general reputation of consumers." While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681(b).

18.     Recognizing the importance of consumer reports and the history of widespread errors these reports frequently contained, Congress required consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in consumer reports. 15 U.S.C. § 1681e(b).

19.     The FCRA also requires consumer reporting agencies to "maintain strict procedures" for reports that are prepared for employment purposes and that contain items of "information which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." Specifically, consumer reporting agencies are required to either provide notice to the consumer at the time the information is reported, or to maintain "strict procedures" to ensure that any such information in the report is "complete" and "up to date." 15 U.S.C. § 1681k(a)(2).

20.     In addition to the above requirements, reports also must be structured in such a way as to not present information in a misleading fashion. For more than 30 years, courts have recognized that "reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports." *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984); *see also Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012); *Gorman v. Wolpoff &*

4

*Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Saunders v. Branch Banking And Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *Pinner v. Schmidt*, 805 F.2d 1258, 1262-63 (5th Cir. 1986); *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199 (D. Conn. 2013).

21.     As discussed below, Defendant routinely violated the FCRA, and violated the rights of Plaintiff and other class members, by characterizing Plaintiff and other class members as "Level 1" sex offenders even though they had no record of being a sex offender.

## ALLEGATIONS RELATING TO PLAINTIFF

22.     In November 2015, Plaintiff applied to work as a driver for Lyft, Inc. ("Lyft"). As part of Plaintiff's application process with Lyft, on November 16, 2015, Defendant provided Lyft with a consumer report on Plaintiff for employment purposes. (Exhibit 1.)

23.     The consumer report provided to Lyft by Defendant improperly identified Plaintiff as a "Level 1" sex offender.

24.     The report begins with a "Report Summary" that consists of a table describing the different types of information about Plaintiff collected by Defendant, the status of Defendant's information searches, and the result of each component of the background check.

25.     For example, the Report Summary table for Plaintiff contains an entry for a "National Sex Offender" component. The status for this component is identified as "Complete" and the result provided is "Clear." (*Id.*)

26.     However, the second-to-last row in the "Report Summary" has another sex-offender related entry. This entry states that Defendant performed a "DOJ Sex Offender Search" on Plaintiff, that the status of this search was "Complete," and that the result was "Level 1:"

| REPORT SUMMARY | | | |
|---|---|---|---|
| COMPONENT | IDENTIFIERS | STATUS | RESULT |
| SSN Trace | XXX-XX-████ | Complete | Complete |
| County Criminal Record | Nunez, Arian, NJ-HUDSON | Complete | Level3 |
| Enhanced Nationwide Criminal Search with National Sex Offender | Nunez, Arian, NUNEZ, ARIAN | Complete | Complete |
| National Sex Offender | Nunez, Arian, NUNEZ, ARIAN | Complete | Clear |
| Federal Criminal Record | Nunez, Arian, NJ-DISTRICT | Complete | Level1 |
| Locator Select | Nunez, Arian, NUNEZ, ARIAN | Complete | Complete |
| DOJ Sex Offender Search | Nunez, Arian, NUNEZ, ARIAN | Complete | Level1 |
| Client Matrix Application | Nunez, Arian, Client Matrix Application | Complete | Complete |

(*Id.*)

27.     The notation "Level 1" in the result column identifies Plaintiff as a sex offender. "Level 1 sex offender" is a frequently used phrase referring to an individual with a record as a sex offender and a likelihood of re-offending. *See* Level-1 sex offender, *Segen's Medical Dictionary* (2011).[1] The website of the Gunderson National Child Protection Training Center explains that the designation of a sex offender as "a level of 1, 2, or 3" indicates "how likely they are to re-offend."[2] This meaning is reflected in federal law, which defines three levels or "tiers" of sex offenders. *See* 42 U.S.C. § 16911(2)-(4) (defining Tier I, Tier II, and Tier III sex offenders). The State of New Jersey, where Plaintiff resides, also distinguishes between Tier 1, Tier 2, and Tier 3 sex offenders. *See* New Jersey State Police, Sex Offender Internet Registry, Frequently Asked Questions 9, 10, 12 & 15.[3]

28.     Plaintiff has never been accused of, much less convicted of, any crime that would cause him to be identified as a sex offender of any type, including a "Level 1" sex offender pursuant to a "DOJ Sex Offender Search."

---

[1] http://medical-dictionary.thefreedictionary.com/Level-1+sex+offender.
[2] http://www.gundersenhealth.org/ncptc/jacob-wetterling-resource-center/keep-kids-safe/sexual-offenders-101/risk-levels.
[3] http://www.njsp.org/sex-offender-registry/faqs.shtml.

29.     The United States Department of Justice ("DOJ") operates the Dru Sjodin National Sex Offender Public Website ("NSOPW") at: https://www.nsopw.gov/. The NSOPW "is the only U.S. government website that links public state, territorial, and tribal sex offender registries from one national search site. Parents, employers, and other concerned residents can utilize the Website's search tool to identify location information on sex offenders residing, working, and attending school not only in their own neighborhoods but in other nearby states and communities."[4] The NSOPW provides "information regarding the presence or location of offenders who, in most cases, have been convicted of sexually violent offenses against adults and children and certain sexual contact and other crimes against victims who are minors."[5]

30.     A search of Plaintiff's name in the NSOPW returns the following result: "**0** records from a national search including all states, territories and Indian Country for First Name like **arian**, Last Name like **nunez**." (Exhibit 2.)

31.     Given that Plaintiff has no record as a sex offender with the DOJ, Defendant easily could have (and should have) reported the result of its DOJ Sex Offender Search as "Clear." Such a result would have been no more burdensome for Defendant, and would have avoided any inaccurate, confusing, or misleading information in Plaintiff's report.

32.     Identifying Plaintiff as a "Level 1" sex offender pursuant to a "DOJ Sex Offender Search" has an adverse effect upon Plaintiff's ability to obtain employment.

33.     On or about November 27, 2015, Plaintiff received the following notification from Lyft: "After reviewing your application it looks like something on your background check didn't meet our criteria. We are very strict about background checks and cannot make any exceptions." (Exhibit 3.)

---

[4] https://www.nsopw.gov/en/Home/About.
[5] https://www.nsopw.gov/en-US/Search/Verification.

34.     Lyft did not hire Plaintiff based, at least in part, on information contained in the consumer report that Defendant provided to Lyft. Moreover, at the time Defendant provided the report to Lyft, Defendant did not notify Plaintiff of the fact that public record information was being reported by Defendant, together with the name and address of the person to whom such information was being reported.

35.     Defendant's conduct has caused Plaintiff to experience a concrete injury to his statutory right to have any consumer report prepared regarding him be the product of reasonable procedures to assure maximum possible accuracy of the information contained in the report.

36.     Defendant's conduct also has caused Plaintiff to experience a concrete injury to his statutory right to have either (i) notice from Defendant that public record information likely to adversely affect his ability to obtain employment was being reported on him or (ii) a consumer that is the product of strict procedures to ensure that any such information is complete and up to date.

## ALLEGATIONS RELATING TO DEFENDANTS' PRACTICES

37.     Throughout the two years preceding the filing of this action, Defendant has routinely prepared consumer reports for employers and other entities seeking information about particular consumers. Defendant is therefore a consumer reporting agency because it sells consumer reports for employment and other purposes.

38.     The text of the FCRA is pellucid and clear. Defendant is required to follow reasonable procedures to assure the maximum possible accuracy of the information reported on consumers, and when a report is used for employment purposes, is required to maintain strict procedures to ensure that any adverse public record information is complete and up to date.

8

39.     Defendant knew it had an obligation to follow these requirements. Defendant and/or its corporate siblings have been sued in the past for similar violations of these requirements. *See Poore v. Sterling Testing Systems, Inc.*, 410 F. Supp. 2d 557 (E.D. Ky. 2006).

40.     Defendant utterly failed to follow these requirements. Instead, Defendant identified Plaintiff and other class members as "Level 1" sex offenders pursuant to a "DOJ Sex Offender Search" despite a complete absence of any reasonable basis for such identification. In doing so, Defendant failed to (1) follow reasonable procedures to ensure the maximum possible accuracy of the report and (2) maintain strict procedures to ensure that public record information likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

41.     Defendant has improperly designed its consumer reports in a manner that classifies persons as "Level 1" sex offenders even though they have no record of a sex offense.

42.     Defendant has adopted this practice despite knowing full well that the practice does not comply with the FCRA.

43.     Defendant is a large corporation that specializes in providing consumer reports, and is a member of the National Association of Professional Background Screeners. Through its own internal legal department and its communications with the Association, it knew or had reason to know that its conduct violates the FCRA.

44.     While Defendant routinely violates the FCRA's core protections, it represents in its advertising and other public statements that it maintains "strict compliance" with state and federal regulations regarding background checks. For example, Sterling's website states that it continuously monitors the requirements of federal legislation, including specifically the FCRA:

> To help our clients establish and maintain compliance with state
> and federal regulations, SterlingBackcheck employs a strict

"monitor-update-inform" lifecycle for all legislative and regulatory bodies.

That means that we:

> Monitor – We continuously monitor sources of legislation at every level of national and international government. For every state, province or locality, we apply an informational "filter" to our service and reports.

> Update – As legislation changes, we do more than just alter our reporting. We also update all of our processes and technology, including our fulfillment process, adverse action process and software. This continuous commitment to legal compliance is reflected in our accreditation by the National Association of Professional Background Screeners (NAPBS). This gold standard is awarded to a small percentage of background screening companies and is the result of our adherence to 56 different quality and compliance measures.

> Inform – We pass on our learning and best practices to our clients through close contact and regular updates. Account managers regularly call or email clients with news and information about updates. Sterling's expert webinars are renowned for sharing industry benchmarks and best practices.

Every report we provide is compliant with the Americans with Disabilities Act, Fair and Accurate Credit Transactions (FACT) Act, Fair Credit Reporting Act (FCRA), Gramm-Leach-Bliley Act, Sarbanes-Oxley Act and USA Patriot Act, as well as the latest rules changes by the Department of Transportation, Federal Trade Commission and Federal Aviation Administration.

http://www.sterlingbackcheck.com/About/The-SterlingBackcheck-Difference.aspx.

45.     With regard to sex-offender searches, Sterling's website further states:

THE MOST CURRENT SEX OFFENDER REGISTRY SEARCH

More than 500,000 sex offenders in state and national registries have been convicted of sexual offenses and violent crimes. Performing a thorough background check on applicants should always include a sex offender registry check. This helps reduce the risk of workplace violence and potential litigation, especially for

10

companies in the education, healthcare, retail and staffing industries.

SterlingBackcheck searches the Federal Department of Justice, which includes real time listings of registered sex offenders for all 50 states – except Nevada, which currently has an injunction in place. By searching the DOJ Sex Offender Registry, you get the most complete and current reporting so businesses can quickly identify sex offenders and other violent criminals.

http://www.sterlingbackcheck.com/Need/Criminal-Records.aspx#SexOffender.

46.     Defendant's practice of designating consumers as "Level 1" sex offenders when they have no record as a sex offender cannot be reconciled with the plain language of 15 U.S.C. § 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

47.     No reasonable person could conclude that designating consumers as "Level 1" sex offenders when those consumers have no record as a sex offender would not be confusing or misleading.

48.     Defendant's practice of designating consumers as "Level 1" sex offenders when those consumers have no record as a sex offender also cannot be reconciled with the plain language of 15 U.S.C. § 1681k(a), which provides that a consumer reporting agency must "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date."

49.     By adopting the practice of designating consumers as "Level 1" sex offenders when those consumers have no record as a sex offender, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

11

50.     Defendant knows or should know that its practice of designating consumers as "Level 1" sex offenders when those consumers have no record as a sex offender does not comply with the FCRA. Defendant has extensive knowledge and experience with the FCRA, and offers free webinars for its customers on topics related to FCRA compliance and best practices. These webinars are led by in-house and external individuals with special expertise on the FCRA's requirements.

51.     By identifying Plaintiff and other class members as "Level 1" sex offenders pursuant to a "DOJ Sex Offender Search" when they in fact have no record as a sex offender with the DOJ, Defendants willfully violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k(a).

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of two classes of individuals as set forth herein.[6]

53.     Plaintiff asserts his claim in Count 1 under 15 U.S.C. § 1681e(b) on behalf of a "Reasonable Procedures Class" defined as follows:

> **Reasonable Procedures Class**
> All individuals on whom Defendant prepared a consumer report on or after April 12, 2014, which identified the subject individual as being a "Level 1" sex offender pursuant to a "DOJ Sex Offender Search" when the individual had no such record with the Department of Justice.

54.     Plaintiff asserts his claim in Count 2 under 15 U.S.C. § 1681k(a) on behalf of a "Strict Procedures Class" defined as follows:

> **The Strict Procedures Class**
> All individuals on whom Defendant prepared a consumer report for employment purposes on or after April 12, 2014, which identified the subject individual as being a "Level 1" sex offender pursuant to a "DOJ Sex Offender Search" when the individual had no such record with the Department of Justice.

---

[6] Plaintiff reserves the right to amend these class definitions or propose other or additional classes or subclasses in his motion for class certification or an amended pleading.

55.    <u>Numerosity</u>:  The Classes are so numerous that joinder of all class members is impracticable. Defendant prepares reports on thousands of consumers, many of whom are members of one or both Classes.

56.    <u>Typicality</u>:    Plaintiff's claims are typical of the members of the Classes. Defendant prepares consumer reports for several purposes, including for employment purposes, and typically identifies consumers as "Level 1" sex offenders pursuant to a DOJ Sex Offender Search even though they have no record of a sex offense. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

57.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation, including litigation involving the FCRA.

58.    <u>Commonality and Predominance</u>:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the classes, including but not limited to:

a)    Whether Defendant is a consumer reporting agency;

b)    Whether Defendant has reasonable procedures to assure maximum possible accuracy in consumer reports;

c)    Whether Defendant has strict procedures that insure that any reported information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date;

d)    Whether Defendant violated 15 U.S.C. § 1681e(b) by issuing consumer reports identifying consumers as "Level 1" sex offenders pursuant to a DOJ Sex Offender Search, when those consumers had no such record with the Department of Justice;

e)    Whether Defendant violated 15 U.S.C. § 1681k(a) by issuing consumer reports for employment purposes that identified consumers as "Level 1" sex offenders pursuant to a DOJ Sex Offender Search, when those consumers had no such record with the Department of Justice;

      f)      Whether Defendant's FCRA violations were willful;

      g)      The proper measure of statutory damages; and

      h)      The proper measure of punitive damages.

59.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Class Action Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties.

60.     Plaintiff intends to send notice to all members of the Classes to the extent required by Rule 23. The names and addresses of the class members are available from Defendant's records.

### CLAIMS FOR RELIEF

### Count I – 15 U.S.C. § 1681e(b)
*Failure to Follow Reasonable Procedures*
*to Ensure Maximum Possible Accuracy*
**(Asserted on Behalf of Plaintiff and the Reasonable Procedures Class)**

61.     15 U.S.C. § 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

62.     Defendant prepared consumer reports on Plaintiff and members of the Reasonable Procedures Class. Defendant provided these reports to third parties in exchange for money.

63.     Defendant's procedures were designed such that its reports identified Plaintiff and members of the Reasonable Procedures Class as "Level 1" sex offenders pursuant to a "DOJ Sex Offender Search," when in fact Plaintiff and members of the Reasonable Procedures Class have no record of being a sex offender with the DOJ.

64.     In respect to these false, misleading, and confusing reports, Defendant did not follow reasonable procedures to assure maximum possible accuracy of the information in the reports relating to the affected consumer, in violation of 15 U.S.C. § 1681e(b).

65.     Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the Reasonable Procedures Class.

66.     Plaintiff and the Reasonable Procedures Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Reasonable Procedures Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Reasonable Procedures Class are further entitled to recover reasonable costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3) and the common fund doctrine.  In addition, pursuant to the Court's inherent authority under 28 U.S.C. § 1331, Plaintiff and the Reasonable Procedures Class are entitled to an injunction enjoining Defendant from continuing to misreport persons (such as Plaintiff and members of Reasonable Procedures Class) as "Level 1" sex offenders when they have no record of such an offense.

### Count II – 15 U.S.C. § 1681k(a)
#### *Failure to Provide Notice or Follow Strict Procedures*
#### (Asserted on Behalf of Plaintiff and the Strict Procedures Class)

67.     In addition to the "reasonable procedures" requirement in 15 U.S.C. § 1681e(b), which governs all consumer reports, the FCRA specifies additional consumer protections that apply when reports are prepared for employment purposes and include public record information

15

that is likely to have an adverse effect on a consumer's ability to obtain employment. 15 U.S.C.

§ 1681k(a). Under such circumstances, the consumer reporting agency must either:

> (1)     at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2)     maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

*Id.*

68.     Defendant prepared consumer reports for employment purposes on Plaintiff and other members of the Strict Procedures Class. Defendant provided these reports to third parties in exchange for money.

69.     These reports routinely included items of public record information that were likely to have an adverse effect on the subject consumer's ability to obtain employment, including information regarding whether Plaintiff and other members of the Strict Procedures Class had any record of a sexual offense.

70.     At the time the information was reported, Defendant did not notify members of the Strict Procedures Class of the fact that public record information was being reported by Defendant, together with the name and address of the person to whom such information was being reported, pursuant to 15 U.S.C. 1681k(a)(1).

71.     Despite this lack of notice, Defendant also did not maintain strict procedures to insure that whenever public record information likely to have an adverse effect on a consumer's ability to obtain employment was reported, it was complete and up to date.

72.     Instead, Defendant's procedures were designed such that its reports identified members of the Strict Procedures Class as "Level 1" sex offenders pursuant to a "DOJ Sex Offender Search," when in fact Plaintiff and members of the Strict Procedures Class have no record of being a sex offender with the DOJ.

73.     Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the Strict Procedures Class.

74.     Plaintiff and the Strict Procedures Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Strict Procedures Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Strict Procedures Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3) and the common fund doctrine. In addition, pursuant to the Court's inherent authority under 28 U.S.C. § 1331, Plaintiff and the Strict Procedures Class are entitled to an injunction enjoining Defendant from continuing to issue consumer reports for employment purposes that misreport persons (such as Plaintiff and members of Strict Procedures Class) as "Level 1" sex offenders when they have no record of such an offense.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as

follows:

      a.      Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

      b.      Designating Plaintiff as representative for the Classes and designating Plaintiff's counsel as counsel for the Classes;

      c.      Issuing proper notice to the Classes at Defendant's expense;

      d.      Declaring that Defendant violated 15 U.S.C. § 1681e(b);

      e.      Declaring that Defendant violated 15 U.S.C. § 1681k(a);

      f.      Declaring that Defendant acted willfully, in knowing or reckless disregard of its obligations, and of the rights of Plaintiff and other class members, under the FCRA;

      g.      Awarding statutory and punitive damages as provided by the FCRA;

      h.      Awarding reasonable attorneys' fees and costs as provided by the FCRA;

      i.      Enjoining Defendant from continuing to engage in similar violations of the FCRA; and

      j.      Granting all other available relief, in law and in equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

76.     Plaintiff and the Classes demand a trial by jury.

18

Dated:  April 12, 2016
New York, New York

Respectfully submitted,


/s/ Joseph A. Fitapelli
Joseph A. Fitapelli

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Nicholas P. Melito
28 Liberty Street
New York, New York 10005
Telephone: (212) 300-0375

**NICHOLS KASTER, PLLP**
Kai H. Richter, MN Bar No. 0296545*
Anna P. Prakash, MN Bar No. 0351362*
Brock J. Specht, MN Bar No. 0388343*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
aprakash@nka.com
bspecht@nka.com

*pro hac vice* applications forthcoming

**ATTORNEYS FOR PLAINTIFF**

19